WETHERBY, ET AL. *v.* RETAIL CREDIT COMPANY

[No. 359, September Term, 1963.]

238

*Decided June 9, 1964.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, HORNEY and MARBURY, JJ.

*James Robert Miller,* with whom were *Miller & Miller* on the brief, for the appellants.

*Joseph B. Simpson, Jr.,* with whom were *Simpson & Simpson, H. Algire McFaul* and *Harry W. Lerch* on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

Appellants, claiming they had been libelled by the appellee, a mercantile credit rating agency, by matter set out in reports to its customers, sued to recover damages. The jury returned a verdict for the credit agency and, in their appeal to this Court, the claimants urge that Judge Shook erred twice in her charge to the jury—first, in not instructing that since the alleged libelant had not pleaded justification "there is a legal presumption of falsehood which arises upon proof of the publication of the defamatory matter; and the jury is bound by this presumption, that the defamatory matter is false," and second, in instructing on damages.

Edith Wetherby and Mary Eileen Dunnigan, who were engaged in the real estate and mortgage business, lived with another single woman in a house in Bethesda. They desired to take out life insurance for business purposes and were turned down by several companies, apparently as a result of reports on them which Retail Credit Company had sent insurance companies at the companies' requests. Investigators of the credit company in-

terviewed neighbors of the appellants and, from the information received, prepared the reports which suggested that the ladies gave loud and boisterous parties at which there was considerable drinking and, on occasions, "brawls," that neighbors have been led to strong suspicions "of Lesbian action between those women" and said that "[i]nformants will not come out and state that they think the applicant [Wetherby] is 'Lesbian' but hint and hedge around and do everything but state it, saying that they definitely do not act like the feminine sex if they are."

The appellants hired a man for $400 to procure copies of the reports and he did so, apparently by breaking into the office of the credit company, where they were kept under lock, and stealing them. The libel suit for damages followed.

At the trial it was stipulated (a) that the credit company, as a mercantile rating agency, had a qualified or conditional privilege to fairly publish to its own legitimately interested business customers the information it received in the course of its investigations, without being liable for defamatory matter therein, provided it did not exceed or abuse the privilege; (there appears to be a sound basis for this concession by the appellants; see *Trussell v. Scarlett,* 18 F. 214 (Cir. Ct. D. of Md., Morris, J.); *Petition of Retailers Commercial Agency, Inc.* (Mass.), 174 N. E. 2d 376; Annotation 30 A. L. R. 2d 776; *Fresh v. Cutter,* 73 Md. 87; *Simon v. Robinson,* 221 Md. 200); (b) that the libels complained of were all based on reports made by the credit company in the regular course of its business and sent only to its own customers and revealed to no one else; (c) that the files containing the results of the investigations leading to the reports and the copies of the reports were kept locked in the credit company's office.

The case was tried on the premises, understood by the judge and the lawyers for both sides, that there had been sufficient publication, the statements suggesting that the appellants were Lesbians were libelous per se and that the truth or falsity in fact of the suggestions was not material and not, as such, an issue in the case. On the question of liability, the case was tried and went to the jury on the narrow issue of whether the credit company had abused or exceeded its qualified privilege.

The testimony adduced on both sides was largely as to the methods employed in making the investigations, the people interviewed, the facts assembled, and the method of reporting these facts to the customers of the credit company. The appellants attempted to show that the writers of the reports had been unfair and, in effect, either had not believed the truth of what they reported or had shown a callous disregard as to whether the matters specified or suggested in the reports were or were not true. However, the appellants themselves elicited from their neighbors, whom they called to the stand, that they had told the investigators of the drinking bouts and brawls and of the Lesbian tendencies they attributed to the appellants, and, on the other hand, in response to their lawyer's question, appellants denied they were Lesbians.

Judge Shook instructed the jury as to publication, as to what constituted defamatory matter (later instructing that to refer to a person as a Lesbian or as having Lesbian tendencies is libelous per se), that there was a qualified privilege in the credit company, and said:

> "And the defendant declares that because of the qualified privilege there has been no libel. That is its defense.
>
> "So the truth or falsity of the matters contained in those documents, those exhibits, is not in issue. The truth does not have to be proven by Mr. Simpson's client; nor does the falsity have to be proven by Mr. Miller's clients. You are not to consider truth or falsity whatsoever in this case; it simply is not an issue.
>
> * * *
>
> "The privilege of the defendant as a mercantile credit agency is a qualified or conditional privilege and may be lost if the defendant exceeds the scope of the privilege or abuses the privilege. If the scope of the defamatory matter, if any, exceeds the exigency of the occasion or reveals more than is necessary for the purpose of the report, then the defendant would lose its privilege because it had exceeded it. * * * Or if the defendant publishes such a report without believ-

ing in its truth or without reasonable grounds for believing in its truth, then you could find that it has abused its privilege and thereby lost it. * * *

* * *

"If you should find that the defendant has lost its privilege because it has abused it or exceeded its scope, the malice would be presumed from the publication of the matter which is libelous *per se,* and your verdict should be for the plaintiffs."

Judge Shook, in concluding her charge, said in part as follows :

"Even if you should find the words themselves were libelous *per se,* and you found that the defendant used them in the scope of their qualified privilege without any abuse, then you would have to find for the defendant."

We think the court's instructions did not prejudice the appellants.

When one publishes matter which libels another per se, as in this case, there arises a presumption of the falsity of the allegation and a presumption of malice in publishing it.

On being sued for the publication of the defamatory matter, the defendant has several options of defense available. (1) He may deny that he did, and prove that he did not, publish the libel. (2) He may rebut the legal presumption of falsity which arises upon proof of the use of the defamatory words by proving that the words were true, for if they were, it matters not that their publication was malicious. (Truth as such can only be shown under a special plea of justification, Md. Rule 342 b 3 and c 2 (h), and, if pleaded and not sustained, is a repetition of the libel and evidence of malice.) (3) He may rebut the legal presumption of malice which arises upon proof of the use of defamatory words by proof that the words were published under such circumstances as to make them privileged. If he does this, he defeats the action, even though the words otherwise would be defamatory, unless the plaintiffs shows actual malice. These propositions are established by 1 *Poe, Pleading*

*and Practice* ('Tiffany's Ed.), Sec. 180; *Domchick v. Greenbelt Services,* 200 Md. 36; *Garrett v. Dickerson,* 19 Md. 418; *Robinett v. Ruby,* 13 Md. 95; *Simon v. Robinson, supra.*

It is a common, if not the general rule, that if the defendant establishes a qualified privilege the plaintiff, to prevail, must show not only malice but falsity. *Ashcroft v. Hammond* (N. Y.), 90 N. E. 1117, 1120; *Barry v. McCollom* (Conn.), 70 A. 1035; *Ripps v. Herrington* (Ala.), 1 So. 2d 899, 903; *Bostetter v. Kirsch Co.* (Mich.), 30 N. W. 2d 276, 278-281; *Broking v. Phoenix Newspapers* (Ariz.), 264 P. 2d 413, 416; *Sowers v. Wells* (Kan.), 114 P. 2d 828; *Miller Ins. Agency v. Home Fire & Marine Ins. Co.* (Mont.), 51 P. 2d 628, 633; 53 C. J. S. *Libel & Slander* Sec. 101, p. 162 ("when it is shown or appears that the communication is conditionally privileged, it is generally held that plaintiff has the burden of going forward with the evidence and proving that it is false and that defendant was actuated by express malice * * *"); 33 Am. Jur. *Libel & Slander* Sec. 274, p. 257 ("[a]lso, a number of authorities seem to require the plaintiff to establish the falsity of the statement after the defendant has made out a prima facie case of privilege"). See also *Newell, Slander & Libel* (3rd Ed.), Secs. 396, 496 and 934.

There is language in several Maryland cases which would indicate an accord. In *Fresh v. Cutter, supra,* Judge McSherry for the Court said that malice ordinarily is inferred from the defamatory words but, when the occasion affords privilege, an exception to the general rule arises as where a master gives a character of a servant, "the plaintiff, to support the action, must prove that the character was both *falsely* and *maliciously* given." Judge McSherry also said that where there is privilege, "the words must be proved to be malicious as well as false." (p. 92 of 73 Md.)

The latter statement was repeated in *Brinsfield v. Howeth,* 107 Md. 278, 287-288.

Clearly, if the plaintiff must prove falsity to recover, when privilege has been established, the appellants were not entitled to the instruction they requested as to the continued presumption of falsity unless justification had been pleaded and truth proven, and the instructions gave them more than they were

entitled to. But we need not decide the point for we think it clear that, at the least, it mattered not after the privilege of the defendant had been established, whether the ostensibly defamatory words were or were not true as far as the plaintiffs were concerned. To be actionable, defamatory words must be both false and have been published with malice. If the publication was privileged under the circumstances, the plaintiff must show malice or lose his suit because, if he does not prove malice, one of the essential elements of the right to recover will have been eliminated and the presence or absence of the other vital element—falsity as such—becomes immaterial. *Fresh v. Cutter, supra; Hagan v. Hendry,* 18 Md. 177, 191; *Lewis v. Daily News Co.,* 81 Md. 466; *Newell, op. cit. supra,* Sec. 498; *Petition of Retailers Commercial Agency, Inc.* (Mass.), *supra,* at p. 379 of 174 N. E. 2d.

Where justification is not pleaded and privilege is present, the defendant cannot show that the defamatory words were true. To establish malice, the plaintiff may offer evidence tending to show that the defendant published the defamatory words without believing them to be true or without honest or reasonable grounds to believe them to be true, and the defendant may seek to show the contrary. Except to this extent, where justification had not been pleaded, truth or falsity was not an issue after the defendant's privilege had been established. *Cf. Domchick v. Greenbelt Services, supra.*

To support their claim that they were prejudiced by Judge Shook's failure to instruct the jury that in the absence of a plea of justification by the credit company, the legal presumption of the falsity of the defamatory words continues and the jury must consider them false, the appellants apparently rely on the statement in *Lewis v. Daily News Co., supra,* at p. 473 of 81 Md. (substantially the same language appears in *Hagan v. Hendry, supra*), that malice is doing without justifiable cause that which is injurious to another "and everything injurious to the character of another, is, in this action, taken to be false, until it is shown by plea to be true." We take it that this conclusion was intended to be limited to cases where the "doing" was without "justifiable cause," that is, where there was no

privilege. Immediately after the quoted language, the Court said:

> "Therefore every publication injurious to the character, is, in law, false and malicious, until the presumption of falsehood is met by plea of the truth, or the presumption of malice is removed by showing a justifiable occasion or motive."

The court did not prejudice the appellants in instructing that the truth or falsity of the words claimed to be defamatory was not an issue in the case, particularly since she added that even if the jury found the words were otherwise libelous, they were not actionable if the defendant published them in the exercise of its qualified privilege, without abuse.

Since the jury found that the credit company had no liability, under instructions that were not prejudicial to the appellants, we do not reach their claim of error as to the instructions of the trial court on damages.

*Judgment affirmed, with costs.*